UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 3:05-CR-00241-LRH-VPC |
| v. | ) | ORDER |
| JAMES BRETT ZIMMERMAN, | ) | |
| Defendant. | ) | |

Before the court is defendant James Zimmerman's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (#46[1]). The United States filed an opposition (#50), and thereafter Zimmerman filed a reply (#51), a supplemental reply and affidavit (#59), a motion for an evidentiary hearing (#61), and a motion for order of the court (#62).

**I.    Procedural History**

On December 21, 2005, Zimmerman was indicted on one count of bank robbery in violation of 18 U.S.C. § 2113(a). Doc. #1. Following his initial plea of not guilty, on January 22, 2007, Zimmerman changed his plea to guilty. Doc. #38. On May 7, 2007, he was sentenced to two hundred forty (240) months incarceration, thirty-six (36) months of supervised release, a $100 assessment, and $30,633.00 restitution. Doc. #43. He filed no appeal.

---

[1]Refers to the court's docket entry number.

On April 14, 2008, Zimmerman filed the present § 2255 motion to vacate, set aside, or correct his sentence on five grounds. Doc. #46. In response to the government's opposition, Zimmerman conceded Grounds Three and Four. Doc. #51, p.1. Following this court's determination that Zimmerman was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel, Doc. #64, the court appointed counsel for Zimmerman and held an evidentiary hearing on September 7, 2011.

**II.　Discussion**

Pursuant to § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

**　A.　Ground One: Threat of Additional Charges**

Zimmerman first contends that his guilty plea was unlawfully coerced by the government's threat of indicting him on two additional bank robberies. He argues that the two charges should have been included in the original indictment, and the government held back the charges to use them as leverage in plea negotiations.

Although a criminal defendant may not be punished for exercising his right to assert his innocence at trial, it is not impermissible for the government during plea negotiations to threaten additional charges that legitimately could be brought as a means of persuading the defendant to accept a plea agreement. *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978). "As a practical matter, in short, this case would be no different if the grand jury had indicted [the defendant] as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain." *Id.* at 360-61. Zimmerman's motion shall therefore be denied on Ground One.

**B. Ground Two: Threat of a Life Sentence**

Zimmerman next contends that his guilty plea should be invalidated as induced by a false statement of fact in the plea agreement—namely, that "the Government will not pursue a life sentence under the '3 Strikes' provision of the sentencing statutes if the defendant enters into this agreement." Doc. #39, ¶ 10 (plea agreement); Doc. #46, p. 14 (motion). Zimmerman argues that this statement falsely implies that the Government *could* pursue such a life sentence and falsely threatens such a sentence, when in fact he would have been ineligible for such a sentence because "[18 U.S.C.] § 3559(c)(3)(A) expressly exempts from [the] definition of 'Serious Violent Felony' robberies that do not involve use of a firearm or dangerous weapon." Doc. #51, p. 2 (reply). Zimmerman further argues that the threat of a life sentence was one of the main determining factors in deciding to plead guilty, and that without the false threat he would not have entered the plea and agreed not to oppose the Government's recommendation of a twenty-year sentence. Doc. #46, pp. 14-15.

The court disagrees that the identified statement in the plea agreement was a false statement of fact or implied a false threat. It is immaterial whether in hindsight the Government may not have ultimately prevailed on any attempt to obtain a life sentence under § 3559(c), and the court makes no determination in that regard. At the time the threat was made and the statement was included in the plea agreement, the complete facts regarding Zimmerman's criminal history were not yet known and whether a life sentence could have been imposed was not determinable with any certainty. Given that uncertainty, there was nothing false about the Government's implied threat to pursue a life sentence or the statement in the plea agreement waiving the option of doing so.

Zimmerman's argument that § 3559(c)(3)(A) would have rendered him ineligible for a life sentence misses the mark. Even if the facts regarding his criminal history were known at the time, the potential applicability of that exception would not prevent the Government from seeking a life sentence under § 3559(c)(1). "[T]he exception found in § 3559(c)(3)(A) is an affirmative defense

to a sentencing enhancement." *United States v. Kaluna*, 192 F.3d 1188, 1196 (9th Cir. 1999) (en banc). It expressly places the burden on "the defendant" to prove "by clear and convincing evidence" that a prior offense did not involve the use or threatened use of a firearm or other dangerous weapon and did not result in death or serious bodily injury. 38 U.S.C. § 3559(c)(3)(A). As the exception places no burden on the Government, *see Kaluna*, 192 F.3d at 1196, nothing in subsection (c)(3)(A) would have prevented the Government from "pursing" a life sentence under subsection (c)(1).

The court therefore finds that, given the early stage of Zimmerman's plea, the limited information at the time, and the inherent uncertainty regarding any future application of § 3559(c) at sentencing, the statement in the plea agreement that the Government "will not pursue a life sentence" was neither a false statement of fact nor a false threat. Zimmerman's motion shall therefore be denied on Ground Two.

**C. Ground Five: Ineffective Assistance of Counsel**

Zimmerman contends that his counsel provided ineffective assistance by failing to investigate whether the Government could have successfully sought a life sentence under § 3559(c) before advising him regarding his plea. Zimmerman argues that he reluctantly pled guilty based on his counsel's erroneous advice that the Government could pursue a life sentence, and that if counsel had investigated the matter, there is a reasonable6 probability that he would not have accepted the terms of the plea agreement because it would have been discovered that he was ineligible for a life sentence.

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 131

S. Ct. 770, 788 (2011). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687, 689). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 788 (quoting *Strickland*, 466 U.S. at 690).

Regardless of the stage of the proceedings, the formulation of the standard is the same. *Premo v. Moore*, 131 S.Ct. 733, 742 (2011). But the substantial deference that must be accorded to counsel's judgment may be measured in different ways in light of the circumstances at the particular stage of the case. *Id.* "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* at 741. Accordingly, in the case of an early plea, the court's deference to counsel's judgment must take into consideration such factors as the absence of a developed or an extensive record and the information then available to counsel, the array of possibilities and inherent uncertainties in what course the case may take, the risks of delaying the plea and giving the government the time to strengthen its case, and the fact that "each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived." *Id.* at 741-42. "[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choice an attorney made at the plea bargain stage," lest the court fall victim to "the distortions and imbalance that can inhere in a hindsight perspective" and bring instability to and potentially undermine the plea bargaining process itself, to the detriment of all involved. *Id.*

Here, in exchange for Zimmerman's guilty plea to one count of bank robbery and agreement not to oppose the government's request for a twenty-year sentence on that charge, the government

5

agreed not to indict Zimmerman for two additional counts of bank robbery, each also subject to a potential twenty-year maximum, and not to pursue a life sentence under the federal "three strikes" statute. Doc. #39, ¶¶ 1, 10. At the time the government made the offer, whether an attempt to obtain a mandatory life sentence would have been successful was uncertain, but quite possible. The charged offense brought the statute into play. *See* 18 U.S.C. § 3559(c)(1). Bank robbery under § 2113 facially qualifies as a "serious violent felony" under § 3559(c)(2)(F)(i), and the report that Zimmerman told the victim teller to "give me all $100's and $50's, hurry up, I am going to blow you off" made it unlikely that he could prove by clear and convincing evidence that the offense did not involve the threatened use of a firearm or other dangerous weapon for purposes of the exception in § 3559(c)(3)(A). It was also known at the time that Zimmerman had an extensive criminal history, making application of § 3559(c) a real possibility. However, neither side had developed the record sufficiently to determine whether Zimmerman actually had two qualifying prior convictions, and thus whether the government could have followed through on its threat. Indeed, because Zimmerman's criminal history would have been relevant only at sentencing, in the absence of a concerted effort to obtain his criminal history before trial, neither side would have become aware until presentence investigation how the sentencing guidelines and statutes would apply.

Zimmerman contends that because of the government's threat and its importance in his decision to accept the plea, his counsel should have investigated his criminal history to determine his eligibility for a life sentence and the credibility of the government's threat. Had that investigation been conducted, one possible scenario is that counsel might have uncovered favorable information, negated the government's most potent bargaining chip, and obtained a more favorable plea bargain and sentence for Zimmerman. But the court cannot determine the reasonableness of counsel's decision based on hindsight and information now available. *See Moore*, 131 S.Ct. at 741. Considering instead only the information available at the time, that scenario was far from certain,

and the strategy of delaying the plea to further develop the facts would have exposed Zimmerman to substantial risks.

First, it might have prompted the government to withdraw the offer, charge the additional two bank robberies, and take its chances in seeking three potential twenty-year terms and application of the "three strikes" statute. After all, the government was also bargaining with incomplete information, was facing the risks and expense of developing its case and going to trial, and in light of those risks and uncertainties was offering to not pursue both the two robberies it knew it could charge and the life sentence that it had reasonable grounds for suspecting might apply. Any delay on Zimmerman's part to take another card, so to speak, might have prompted a decision by the government to withdraw the offer and play out the hand. Even if counsel's investigation turned out favorably for Zimmerman on the three-strikes issue, he would still be facing two additional bank robbery counts and a potential sixty-year sentence.

Second, the investigation might have confirmed Zimmerman's eligibility for a mandatory life sentence, with no turning back. A delay to investigate Zimmerman's criminal history would have given the government the opportunity to do the same. At that point, having gone to the trouble of obtaining the evidence, having probably indicted the three additional robberies, and needing a conviction on only one of the charges to obtain a mandatory life sentence under § 3559(c)(1) ("shall"), the government would have had little incentive to plea bargain.

In *Moore*, the Supreme Court determined that defense counsel's failure to move to suppress a confession before advising the defendant to agree to a plea bargain did not constitute deficient performance, in light of "[w]hat counsel knew at the time" and the risk that "[d]elaying the plea for further proceedings would have given the State time to uncover additional incriminating evidence that could have formed the basis of a capital prosecution." 131 S.Ct. at 740, 742-43. "In these circumstances, and with a potential capital charge lurking, Moore's counsel made a reasonable choice to opt for a quick plea bargain." *Id.* at 742-43.

7

The same result is required here. Given what counsel knew (and did not know) at the time—including Zimmerman's extensive criminal history, the potential that he could be subject to a mandatory life sentence, and the certainty that he was independently chargeable with two additional bank robberies with twenty-year maximums on each—the court cannot say that "no competent attorney" would have agreed to a plea bargain without conducting an investigation into his criminal history and potentially betting the farm in the process. *Id.* at 741. The court therefore concludes that Zimmerman has failed to establish deficient performance under *Strickland* and *Moore*. Zimmerman's motion shall therefore be denied on Ground Five.

IT IS THEREFORE ORDERED that Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (#46) is DENIED.

IT IS SO ORDERED.

DATED this 13th day of September, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE